**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MR. MUDBUG, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 09-5438** |
| **AXIS SURPLUS INSURANCE CO.** | * | **SECTION "L"(3)** |

## ORDER AND REASONS

The Court has before it two motions for partial summary judgment filed by Defendant AXIS Surplus Insurance Company (Rec. Docs. 24, 25). The Court has considered the briefs and the applicable law and now issues the following Order and Reasons.

## I. BACKGROUND

This case arises from an insurance coverage dispute over commercial losses caused by Hurricane Gustav. Plaintiffs, a corporation and its president ("Mr. Mudbug"), owned commercial property in Kenner. Defendant AXIS issued a commercial insurance policy to Mr. Mudbug providing property and business interruption coverage. The parties do not dispute the circumstances surrounding procurement of the policy. Mr. Mudbug sought a commercial coverage policy through an agent, Fontenelle & Goudreau, and a broker, NAPCO, acting on Plaintiffs' behalf. NAPCO contacted AXIS to obtain a quote. AXIS provided a price quote which reflected a $50,000 premium and a 100% co-insurance term on business interruption coverage. Pursuant to instruction from Mr. Mudbug's agent, NAPCO instructed AXIS to bind according to the quote. AXIS issued a policy binder with a 100% co-insurance term for business interruption coverage. AXIS also issued a confirmation of property insurance, which contained

a 100% co-insurance term for business interruption coverage and reflected a $50,000 premium. The final policy had a $50,000 premium. The form page of the policy, as issued, listed the co-insurance endorsement by number as included in the policy; however, the page containing the co-insurance endorsement was omitted. Thus, the final policy did not contain a co-insurance provision. There is no evidence in the record to suggest that omission of the co-insurance endorsement was anything but a clerical error.

On September 1, 2008, Hurricane Gustav hit Louisiana and damaged the insured property. Mr. Mudbug made a claim under the policy for damage to real and personal property and for business interruption losses. AXIS requested additional documentation to verify that the physical damages exceeded the $100,000 deductible. AXIS also discovered the omission of the co-insurance term from the policy, delivered the endorsement to Mr. Mudbug, and calculated the business interruption losses due under the policy in light of the co-insurance term. Mr. Mudbug contends that the co-insurance term is unenforceable and that AXIS's reliance on the term is arbitrary and capricious.

## II. PRESENT MOTIONS

Axis has filed two motions for partial summary judgment. First, Axis has moved for summary judgment on coverage for real and personal property damage under the policy, arguing that Mr. Mudbug's documented losses do not exceed the $100,000 policy deductible (Rec. Doc. 24). Mr. Mudbug does not oppose this motion (Rec. Doc. 33), and accordingly the motion is GRANTED.

Second, Axis has moved for summary judgment seeking reformation of the insurance policy (Rec. Doc. 25). Axis argues that the common intent of the parties was to include in the

policy a 100% co-insurance requirement for business interruption losses, as reflected by the price quote, the binder providing temporary coverage, the policy confirmation, and the forms page of the policy. Because the policy as issued did not include the co-insurance term, Axis seeks reformation to correct this mistake and to conform the policy to the mutual intent of the parties. Mr. Mudbug opposes the motion and argues that the co-insurance term is an exclusionary term that cannot be enforced against it because the term was not included in the final delivered policy.

## III. LAW AND ANALYSIS

### A. Summary Judgment Standard

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific

facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322 - 24, and Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249 - 50 (citations omitted).

**B. Reformation**

Under Louisiana law, insurance policies are contracts that must be interpreted in accordance with general rules of contract interpretation. *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code. art. 2045. "[I]nsurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." *Samuels v. State Farm Mut. Auto. Ins. Co.*, 06-034, p. 6-7 (La. 10/17/06); 939 So.2d 1235, 1240 (quotation omitted). A policy may also be reformed if the mutual intent of the parties is not reflected in the final document "due to a unilateral mistake made by the insurer or his agent in drafting the agreement." *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 203 (5th Cir. 1990). Reformation may "alter 'the amount of insurance, the term and duration of the risk, the property or interest covered by the policy, or the name of the person involved and the ownership of the property.'" *Pacific Ins. Co. v. Quarles Drilling Corp.*, 850 F.2d 1087, 1089 (5th Cir. 1988) (quoting *Phoenix Indem. Co. v. Marquette Cas. Co.*, 320 F.2d 486, 492-93 (5th Cir. 1963)). Even unambiguous terms may be reformed if they do not reflect the actual mutual agreement of the parties. *See* William Shelby McKenzie & H. Alston Johnson, 15 Louisiana Civil Law Treatise § 5 (3rd ed. 2006).

The party seeking reformation has the burden of proving mutual error and may do so through parol evidence. *Samuels*, at p. 7; 939 So.2d at 1240. Proof of mutual error must be made by clear and convincing evidence if the written policy expresses a substantially different risk than that intended by the parties. *Id.* (citing *Bonadona v. Guccione*, 362 So.2d 740, 744 (La. 1978)).

**C. Analysis**

As set forth above, the facts and circumstances preceding the purchase of the commercial coverage policy are not in dispute. Mr. Mudbug agrees with AXIS's statement of the pertinent facts and has not supplemented the record with any summary judgment evidence related to its intent to be bound by a co-insurance term. (Rec. Docs. 32 at 1, 32-1). That undisputed evidence clearly and convincingly establishes that, throughout the negotiation and procurement of the policy, the parties contemplated and agreed to a 100% co-insurance term. The co-insurance term was included in AXIS's price quote. Through an agent and broker acting on its behalf, Mr. Mudbug accepted the quote and did not object to the co-insurance term. AXIS issued a binder and a policy confirmation which included the co-insurance term. The forms page of the policy itself listed the identifying number of the co-insurance endorsement. The omission of the co-insurance endorsement itself thus appears to be only a clerical error that failed to reflect the mutual intent of the parties. Because there is no genuine issue of fact regarding the intent of the parties to include a co-insurance term and because AXIS has carried its burden to show that the policy does not reflect that intent due to a mere drafting, reformation is warranted.

In opposition, Mr. Mudbug admits that insurance policies can be reformed and does not appear to argue that the prerequisites for reformation are absent. Rather, Mr. Mudbug argues

that reformation is unavailable in these circumstances because the co-insurance endorsement was not included in the delivered policy and is therefore unenforceable as a matter of law. Louisiana Revised Statute § 22:873 (formerly codified as § 22:634) requires delivery of a policy to the insured. Delivery of the policy, and any exclusionary provision contained therein, "is essential because the insured will otherwise assume the desired coverage exists." *La. Maint. Svcs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1252-53 (La. 1993). An exclusion not contained in the delivered policy cannot be enforced against the insured. *Id.* Thus, Mr. Mudbug attempts to sidestep the reformation question entirely by arguing that "the policy limitations on coverage which were not delivered to the insured are simply unenforceable and invalid." (Rec. Doc. 32 at 4).

Section 22:873 does not preclude reformation under these circumstances. First, the co-insurance term at issue is not a coverage exclusion. The policy at issue covered business interruption losses, while the co-insurance provision simply affected how those losses would be calculated based on the amount of coverage sought and the premium paid by Mr. Mudbug. *See* William Shelby McKenzie & H. Alston Johnson, 15 Louisiana Civil Law Treatise § 341 (3rd ed. 2006) ("This concept does not differ substantially from a 'deductible' or a 'retained amount,' which serves the same purpose but does so in a stated dollar amount. A co-insurance clause requires the insured to bear a percentage of certain losses if he has chosen not to purchase a certain level of coverage."); Lee R. Russ & Thomas F. Segalla, 7 Couch on Insurance § 98:17 (3rd ed. 1995 & Supp. 2010) ("Stated otherwise, the term 'coinsurance' denotes a relative division of the risk between the insurer and the insured, depending upon the relative amount of the policy and the actual value of the property insured. In practice, such a provision imposes an

obligation upon the insured to maintain a specific amount or percentage of insurance, failing which he or she becomes a coinsurer to the extent of any deficit."). Louisiana law prohibits enforcement of exclusions not delivered with the policy but the co-insurance term is not an exclusion. Accordingly, this rule does not bar reformation of the policy and enforcement of the co-insurance term.

Second, even if the co-insurance term is sufficiently akin to an exclusion on these facts, reformation is still warranted. Reformation is an equitable remedy. *Quarles*, 850 F.2d at 1089. Mr. Mudbug has not submitted any summary judgment evidence showing that it did not intend to be bound by the co-insurance term. The presence of a co-insurance term in the policy figured into the premium that Mr. Mudbug paid. It would not be equitable to allow a mere clerical omission of that term to defeat the actual agreement of the parties.

Moreover, it is not inequitable or unfair to reform the policy and enforce the co-insurance provision even though Mr. Mudbug was not provided with the exact text of the co-insurance provision. The delivery rule exists to prevent surprise enforcement of an undisclosed exclusion. Here, AXIS agreed to sell and Mr. Mudbug agreed to purchase an insurance policy with a co-insurance provision. Mr. Mudbug can claim no real surprise or prejudice from enforcement of a policy term which it agreed to but which was mistakenly omitted from the final policy. Thus, although the co-insurance endorsement was not delivered with the policy, "the principles underlying the delivery requirement were met in this case; that is, [Mr. Mudbug] was clearly aware" that the agreement was for an insurance policy containing a co-insurance requirement.[1]

[1]Mr. Mudbug had been covered by a previous policy that contained a co-insurance provision and therefore had familiarity with how co-insurance provisions operate.

*See Naquin v. Fortson*, No. 99-2984, at p. 4-5 (La. App. 1 Cir. 12/22/00); 774 So.2d 1277, 1279-80 (affirming grant of summary judgment against plaintiff who did not receive policy but had notice of coverage exclusion).

Nor does *Fruge v. Ulterra Drilling Technologies, L.P.* support Mr. Mudbug's position. In *Fruge*, the court was presented with a motion to reform a general liability policy to remove a named insured and thereby defeat the claim of a third-party tort victim seeking coverage under the policy. *See* No. 07-789, 2010 WL 2777062, at *5-6 (W.D. La. Jul. 14, 2010). The court denied the motion to reform because "reformation that limits the recovery of a third party tort victim through post-accident invalidation of an instrument is unacceptable." *Id.* at *6. Moreover, the requested reformation directly conflicted with a Louisiana insurance statute prohibiting retroactive annulment of a policy after a potentially covered accident. *See id.* (citing La. Rev. Stat. 22:1262). In this case, there is no issue of annulment of the policy or prejudice to a third party who relied on the delivered policy, as there was in *Fruge*.[2]

In short, this case involves sophisticated business entities that negotiated for and intended to be bound by a co-insurance term that was not reflected in the final written policy due to a clerical mistake. An insurance policy that does not reflect the mutual intent and agreement of the parties due to a mere drafting mistake can be reformed to properly reflect the actual agreement. *Bud's Boat Rental*, 917 F.2d at 203. On these undisputed facts reformation of the policy to include the intended co-insurance requirement is appropriate and equitable.

[2]Likewise, *Duncan v. U.S.A.A. Ins. Co.* is inapposite because it too dealt with uninsured motorist coverage and rejected reformation that would "adversely affect the rights of [third parties] who, prior to the reformation, would be able to recover damage under the UM coverage provisions." 06-363, p. 15 (La. 11/29/06); 950 So.2d 544, 553-54.

## IV. CONCLUSION

Accordingly, Defendant AXIS's motions for partial summary judgment (Rec. Doc. 24 and 25) are GRANTED. Plaintiffs' claims for payment under the policy for damage to real and personal property are DISMISSED. The insurance policy at issue is reformed to include the 100% co-insurance on business interruption coverage endorsement.

New Orleans, Louisiana, this 2nd day of December, 2010.

UNITED STATES DISTRICT JUDGE